WACHOWSKI and wife, Appellants, vs. LUTZ and others, Respondents.

*September 17—October 14, 1924.*

*Fraud: Rescission: Action for damages: Secret employment by one party of agent of another: Damages as substitution for equitable relief: Conspiracy: Nature of action: Measure of damages: Exchange of lands: Disparity in values as evidence of fraud: Fiduciary relation.*

1. An action in which the complaint alleged that the plaintiffs were induced to enter into an exchange of lands because of various false and fraudulent representations, and prayed judgment rescinding and setting aside the transaction, together with such other relief as was equitable, was properly construed to be one at law for the recovery of damages; as to entitle plaintiffs to a rescission they should have acted with reasonable promptness in rescinding or offering to rescind or in bringing action after the discovery of the alleged fraud.  p. 588.

2. The secret employment by the defendants of the father-in-law of one of the plaintiffs to assist the defendants in making the exchange, when the defendants knew that plaintiffs had confidence in and were relying on the judgment of such father-in-law in consummating the deal, was a species of fraud, which if established probably could be redressed by a court of equity; but plaintiffs having lost their equitable remedies, there is no rule of law affording any measure of damages for this kind of fraud.   p. 589.

3. A court of equity will set aside and cancel a contract where the agent of one party acts also as the secret agent of the other, and, where the *status quo* cannot be restored, will grant other appropriate relief in the way of money damages; these damages are, however, not in the nature of legal damages, but substitution for the equitable remedy which could not be awarded.   p. 590.

4. Proof of a conspiracy generally rests upon circumstantial evidence; and evidence that defendants agreed, if they made the deal, to pay a sum of money to the father-in-law of one of the plaintiffs in whom they reposed trust and confidence, and that the father-in-law heard and acquiesced in a representation made by one of the defendants concerning the amount of plowed land on their farm, when he must have known it to be

untrue, together with other circumstances of the case, are *held* to justify a finding of conspiracy on the part of the defendants and the father-in-law to defraud the plaintiffs in the exchange of the properties. p. 592.

5. A conspiracy is the combination of two or more persons to do a criminal or an unlawful act, or to do a lawful act by criminal or unlawful means; and in this case an express agreement to injure the plaintiffs was not necessary. p. 593.

6. The disparity in an exchange wherein defendants secured an $8,000 farm for a *quid pro quo* of $3,550, in itself constitutes evidence of fraud. p. 593.

7. A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal. p. 594.

8. A conspiracy, coupled with injury to a third person, constitutes a well established legal cause of action, the gist of which is the damage done; and in this case the measure of plaintiffs' damages is the difference in value between the property parted with and that received in the exchange. p. 594.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Modified and affirmed.*

This is an action to recover damages growing out of fraud perpetrated by the defendants on the plaintiffs in the exchange of farms. On the 29th day of March, 1921, the plaintiffs were the owners of a farm near Pulaski which the court found to be worth $11,000 and upon which there was a mortgage of $3,000. The defendants were the owners of a farm in Marathon county which the court found to be worth $5,500 and upon which there was a mortgage of $2,400. John Zywicki was the father of plaintiff *Helen Wachowski* and lived on a farm adjoining the defendants' farm.

Shortly prior to the 29th day of March plaintiffs visited at the Zywicki home. Plaintiff *Adam* and Zywicki, upon the occasion of such visit, walked along the logging road which ran across the northern part of defendants' farm.

There was, however, snow and ice on the ground and the plaintiff *Adam* made no note or observation of the character of the soil, or anything else pertaining to the farm. At that time he entertained no thought of buying the farm. A few days thereafter the defendants *Lutz* and *Zell* and John Zywicki called at plaintiffs' home at Pulaski and entered into negotiations which culminated in an exchange of farms, the plaintiffs deeding their farm to the defendants and the defendants deeding their farm to the plaintiffs, and the defendants paying to the plaintiffs $400 boot money. Thereafter plaintiffs moved onto the new farm. Shortly thereafter plaintiffs became dissatisfied with the deal, claiming that the farm was not as represented, and, eventually, brought this action.

The complaint alleges, among other things:

"That the said defendants conspired to induce the plaintiffs to enter into the transaction hereinafter set forth through trick and artifice, false and fraudulent and misleading statements, acts, motions, pretenses, and representations; that the said defendants, as part of their said conspiracy, through trick and artifice obtained the confidence of the plaintiff by employing plaintiff's father-in-law, John Zywicki, as their secret agent, to aid and co-operate with them in negotiating an exchange of the properties described as aforesaid; that the said defendants, as part of their said conspiracy to cheat and defraud the plaintiffs out of their said farm, knowingly, and for the purpose of enlisting the confidence of the plaintiffs, induced John Zywicki, father-in-law of the plaintiff, in whom plaintiffs trusted and placed full confidence, to accompany them to the farm of the plaintiffs, where all negotiations as hereinafter set forth took place, under a secret agreement with the said John Zywicki that if they made a deal with the plaintiffs they would pay him $100 and all expenses, but that if they did not make a deal he would get only his expenses."

The complaint then goes on to allege that to induce the plaintiffs to enter into the transaction the said defendants

made various false and fraudulent misrepresentations, among which were that their said farm was all of a good quality of good agricultural lands; that thirty-five acres thereof were under cultivation; that they had paid $8,500 therefor; that it was then marketable at $9,000 cash, and was of the reasonable market value of at least $10,000 to $12,000; that it was clear of weeds, contained no Canada thistles, and that it was not stony.

The prayer demanded judgment against the defendants rescinding and setting aside the entire transaction set forth in the complaint, together with such other and further order, judgment, or relief as to the court may seem just and equitable.

The case was tried before the court. The court made and filed findings of fact in which it was found that plaintiffs were induced to enter into said contract and make said exchange by means of false and fraudulent representations on the part of defendants to the effect that there were thirty-five acres of cleared land on said farm and that the soil thereof was as good as the soil of the plaintiffs' farm at Pulaski, whereas in fact there were not to exceed nine acres of cleared land on the defendants' farm, and there were about six or eight acres so underlaid and covered with rock that the same can never be made fit for cultivation. The court failed to find in favor of plaintiffs in respect to other alleged false representations. Plaintiffs' damages were assessed at the sum of $2,000, and from the judgment entered in favor of plaintiffs and against defendants for that amount plaintiffs bring this appeal.

For the appellants there was a brief by *Lehner & Lehner* of Princeton and *A. H. Eberlein* of Wausau, and a supplemental brief by *Otto P. Lehner* of Oconto Falls, and oral argument by *Philip Lehner*.

*Geo. W. Lippert* and *G. J. Boileau*, both of Wausau, for the respondents.

OWEN, J.    The court construed the action as one at law for the recovery of damages.    The appellants contend that it is an equitable action for rescission and that the judgment should have been for a cancellation of the deeds and a restoration of the *status quo,* or such other equitable relief as may be appropriate in the premises.    There is no express or implied allegation in the complaint that plaintiffs acted with reasonable promptness in rescinding or offering to rescind, or in bringing the action, after the discovery of the alleged fraud.    The court found as a fact that

"The plaintiff has, since being in a position where he knew, or ought to have known, the falsity of the representations hereinbefore found, continued to live on the farm in the town of Kronenwetter, has cleared an additional four acres, has built a granary at an expense of about $600, and obtained new loans and given new mortgages on said farm, aggregating $4,100, which are now unpaid.    The plaintiff did not give notice of any claim of misrepresentation nor demand any damages nor rescission of the exchange until after all of the foregoing transactions had occurred."

In order to entitle the plaintiffs to a rescission of the contract they should have acted to that end with reasonable promptness after the discovery of the fraud perpetrated upon them.    *Mueller v. Michels, ante,* p. 324, 197 N. W. 201, 199 N. W. 380.    The complaint was not only barren of such a necessary allegation, but the finding of the court, fully supported by the evidence, negatives such action on the part of the plaintiffs.    The court correctly construed the action as one at law for the recovery of damages.

The appellants except to the failure of the court to find in their favor upon various other alleged misrepresentations. An examination of the record shows that as to such representations the testimony was in conflict and that there was no such preponderance of the evidence in favor of the plaintiffs' contentions as to warrant this court in disturbing the action of the trial court in refusing to so find.    We are at a

loss to understand how the appellants' counsel can seriously urge this as a ground for reversal. His attitude manifests a most partisan view of the evidence and a zeal for the interests of his clients that interferes with that fair and impartial presentation of facts by which alone attorneys can aid and win the confidence of courts.

Appellants next contend that the judgment fails to compensate them for fraud perpetrated independent of actual misrepresentations. The fraud referred to is the secret employment by the defendants of the father-in-law of one of the plaintiffs to assist them in making the deal. The contention is that the defendants, knowing that the plaintiffs reposed trust and confidence in John Zywicki, the father-in-law of the plaintiff *Adam Wachowski*, agreed to pay Zywicki $100 in case the deal should be effected; that in consummating the deal they did rely upon the judgment of John Zywicki, but that such judgment had been tainted by reason of the secret employment of him by the defendants and their promise to pay him $100 in the event of the consummation of the deal, thus depriving them of the benefit of the honest judgment of said John Zywicki. This was a species of fraud which if established probably could be redressed by a court of equity, but the plaintiffs lost their equitable remedies by their delay already mentioned. In *Potter v. Necedah L. Co.* 105 Wis. 25 (80 N. W. 88, 81 N. W. 118), at p. 31 it is said:

"The foundation principle upon which all rules for determining damages in a case of actionable fraud rests, is that the wronged party is to be compensated for the loss he sustained by the fraud to the extent of the natural and proximate consequences of the wrong,—for such results 'as happen in the natural course of things and were to be expected to ensue according to the general experience of mankind.'"

Subordinate to this general principle, sub-rules by which damages for various kinds of fraud are to be measured have been established, as, for instance, the rule by which

damages for fraudulent misrepresentations are to be measured.

We know of no rule of law which affords any measure of damages for fraud of this nature. It is a species of fraud comparable to that of a secret dual agency, such as was discussed in *Weinhagen v. Hayes,* 174 Wis. 233, 178 N. W. 780, 183 N. W. 162, 187 N. W. 756; and *Mueller v. Michels, ante,* p. 324, 197 N. W. 201, 199 N. W. 380. It is apparent that such fraud may result in much damage or little damage. It may constitute an important factor in the consummation of a contract or it may be of little or no consequence. The difficulty of reducing such influence to financial terms is apparent.

However, a court of equity will not tolerate such conduct on the part of an agent, and, on the theory that fraud vitiates everything, it will cancel and set aside a contract where the agent of one party also acts as the secret agent of the other, and, where the *status quo* cannot be restored, grant other appropriate relief in the way of money damages, as was done in *Mueller v. Michaels, supra.* The damages awarded in that case are not in the nature of legal damages, but substitution for the equitable remedy of rescission, which could not be awarded in that case. So in this case, the conduct of the defendants in suborning the judgment of John Zywicki, the confidant of plaintiffs, and depriving them of his honest and unbiased judgment, while constituting a fraud from which a court of equity might grant relief, does not constitute a fraud for which a court of law affords any measure of damages. The remedies for double dealing and secret agency are discussed in sec. 2137 in 2 Mechem on Agency (2d ed.), but no suggestion is contained therein, and we have found no authority for the proposition, that such wrongs can be redressed in a court of law.

But the complaint sets forth another well known legal cause of action. By a reference to the statement of facts it will appear that the complaint alleges that the defendants

conspired to induce the plaintiffs to enter into the transaction, etc., and that "through trick and artifice they obtained the confidence of the plaintiffs by employing plaintiff's father-in-law, John Zywicki, as their secret agent, to aid and co-operate with them in negotiating an exchange of the properties described as aforesaid, and for the purpose of enlisting the confidence of the plaintiffs induced John Zywicki, in whom plaintiffs trusted and placed full confidence, to accompany them to the farm of the plaintiffs, where all negotiations took place, under a secret agreement with the said John Zywicki that if they made a deal with the plaintiffs they would pay him $100 and all expenses." After the court made and filed the findings of fact, the plaintiffs requested the court to make, among others, the following additional findings:

"1—a. That the defendants, *Lutz* and *Zell*, conspired with John Zywicki, father-in-law of the plaintiff *Adam Wachowski,* to defraud the plaintiffs in the exchange of the properties aforesaid, and in furtherance of said conspiracy, for the purpose of enlisting the confidence of the plaintiffs, co-operated with said John Zywicki, in whom plaintiffs placed full confidence and reliance, and went to Pulaski to plaintiffs' farm, accompanied by said Zywicki, where all negotiations took place, under a secret agreement with said Zywicki that if they made a deal with the plaintiffs they would pay him $100 for his services and all his expenses, but, if they did not make the deal, they would pay only his expenses. That pursuant to said agreement, said Zywicki aided and co-operated with the defendants in negotiating this exchange of properties. That the plaintiff did not learn of this arrangement of defendants with Zywicki until about fifteen months after the deal. On the trial Zywicki was not friendly to the plaintiff."

"1—b. The plaintiff was a Polish farmer, residing at Pulaski, and illiterate, unable to read. At the time of this exchange, the farm in the town of Kronenwetter, Marathon county, was frozen and covered with snow and ice. The plaintiff complained to the defendants about the inequity of this deal about four months after the deal was made and

requested each of the defendants to make an adjustment, but they refused."

At the foot of this request the court indorsed this comment:

"The foregoing requests for additional findings were received in due time. The proposed findings are in accord with the evidence and would be added if it were deemed good practice to do so. They appear to the court to find facts which are mostly evidentiary of the findings already made and for that reason are not included in findings made."

For the purposes of our further discussion we shall regard these proposed findings as having been made.

Defendants admit that they agreed to pay Zywicki $100 if they made the deal. It is conceded that Zywicki lived on a farm adjoining, or in close proximity to, the 'farm which the defendants traded to the plaintiffs. Cordial relations existed between the plaintiffs and Zywicki and they reposed trust and confidence in him. The plaintiff *Adam* asked John Zywicki what he thought of the deal and John replied that he thought it was all right. He heard the defendants represent to the plaintiffs that there were thirty-five acres cleared on the land, and acquiesced in such representation, when he must have known that it was untrue. It plainly appears that the plaintiffs knew nothing of the character or value of defendants' farm, and it is quite apparent that they relied very largely upon the representations made to them in such behalf and reposed no little trust in Zywicki. The proof of a conspiracy generally rests upon circumstantial evidence, and the foregoing, together with other circumstances of the case, justify a finding of conspiracy. The court evidently took the view that plaintiffs' recovery was limited to express fraudulent representations and failed to appreciate the legal consequences of a conspiracy. Fraud perpetrated by an individual acting alone is one thing, while fraud perpetrated by a number acting in concert is quite another. It quite often happens that acts which are *damnum absque injuria*

when done by an individual become actionable when done in pursuance of a combination of persons. *Randall v. Lonstorf,* 126 Wis. 147, 105 N. W. 663. A conspiracy is commonly defined to be a combination of two or more persons to do a criminal or unlawful act or to do a lawful act by criminal or unlawful means. *Martens v. Reilly,* 109 Wis. 464, 84 N. W. 840. Conspiracies for the following purposes have been held unlawful: To induce the breach of a contract, *Martens v. Reilly, supra; McLennan v. Church,* 163 Wis. 411, 158 N. W. 73; to alienate affections, *Randall v. Lonstorf, supra;* to defraud, *Lange v. Heckel,* 171 Wis. 59, 175 N. W. 788; *Patnode v. Westenhaver,* 114 Wis. 460, 90 N. W. 467.

According to the findings of the court the defendants secured an $8,000 farm for a *quid pro quo* of $3,550. This disparity in itself constitutes evidence of fraud. *Kuelkamp v. Hidding,* 31 Wis. 503; *Risch v. Von Lillienthal,* 34 Wis. 250; *Olson v. Laun,* 170 Wis. 106, 174 N. W. 473. The purpose on the part of the defendants to consummate the transaction resulting in such great injury to the plaintiffs constituted an unlawful conspiracy. An express agreement between the defendants to consummate the injury to the plaintiffs was not necessary.

"A mere tacit understanding between conspirators to work to a common purpose is all that is essential to a guilty, actionable combination. . . . Mutuality in the undertaking may be secured without any express agreement and without a spoken or written word between the conspirators or a meeting of the members of the combine, or their, even, all knowing each other; or the precise thing to be accomplished or plans for its accomplishment, either in a general way or in detail, being distinctly stated by any member of the combine to any other member. If there is a meeting of minds, brought about in any way, to accomplish the common purpose, the essentials of a guilty combination are all satisfied." *Patnode v. Westenhaver,* 114 Wis. 460, 474, 90 N. W. 467, and cases there cited.

We have, then, an unlawful agreement on the part of the defendants. It matters not whether the purpose thereof was accomplished by lawful or unlawful means. But it seems clear that, even though the purpose were lawful, the means by which the end was accomplished cannot be judicially sanctioned as lawful. John Zywicki stood in a fiduciary relation to the plaintiffs, not because of his personal relationship to them, but because, as a matter of fact, they reposed trust and confidence in him.

"A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal." *Miranovitz v. Gee,* 163 Wis. 246, 252, 253, 157 N. W. 790, and cases there cited.

The conduct of the defendants in agreeing to pay John Zywicki $100 in the event of the consummation of the deal tended to corrupt and pervert the judgment upon which there was every reason to believe the plaintiffs placed great reliance, and deprive them of the honest advice which they assumed they were getting, thus inducing a recreant discharge of a duty of trust. This is a species of subtle and reprehensible fraud which should not be regarded with judicial complacency. Crass misrepresentations are speedily redressed in law. The more subtle the fraud the more difficult it is to be dealt with in a court of law; but when fraud of this nature is employed to accomplish the ends of a conspiracy, courts of law possess ready means for granting redress. The gist of a civil action for conspiracy is the damage. The conspiracy, coupled with injury to a third person, constitutes a well established legal cause of action. We have that here, and the measure of redress is the injury proximately resulting from the conspiracy. The injury accomplished is measured by the difference between $3,550 and $8,000. This is the measure of plaintiffs' damages, and the judgment should have been for $4,450.

*By the Court.*—The judgment is modified by inserting four thousand four hundred and fifty ($4,450) dollars for two thousand ($2,000) dollars, and, as so modified, is affirmed.

ESCHWEILER, J., dissents.