SIDNEY MORRIS & CO. v. NATIONAL ASS'N OF STATIONERS, OFFICE OUTFITTERS & MANUFACTURERS et al. (two cases.)

Nos. 4232, 4233.

Circuit Court of Appeals, Seventh Circuit.
April 23, 1930.

Benjamin C. Bachrach, of Chicago, Ill., for appellant.

Isaac B. Lipson, of Chicago, Ill., for appellees.

Before EVANS, PAGE, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

No. 4232. This appeal brings up a judgment dismissing appellant's complaint because of its alleged failure to state a cause of action. A demurrer to the complaint was sustained. Appellant elected to stand upon its complaint, whereupon a judgment of dismissal was entered. The alleged cause of action is traceable to provisions of two sections, 13 and 15, of title 15, USCA, commonly known as the Clayton Act.

No. 4233. This appeal reviews a decree that dismissed a bill wherein injunctive relief was sought upon stated facts similar to those appearing in 4232. The relief here sought is traceable to the provisions of section 26, tit. 15, USCA. The bill herein, like the complaint in 4232, was dismissed because of its alleged failure to state a case which entitled the complainant to the relief sought.

Both appeals will be disposed of in one opinion.

4232. Plaintiff alleged that it was, and is, an Illinois corporation engaged in the business of selling at retail and wholesale all manner and variety of stationery, office fixtures, and office equipment, hereafter called office equipment, and was, and is, engaged in commerce among the several states of the United States as commerce is defined in title 15, USCA; that defendants are corporations and individuals or associations engaged in the business of manufacturing and selling office equipment, and were engaged in commerce among the several states during the periods when the acts complained of were committed.

Plaintiff divided the 104 defendants into three groups. The largest is group one, consisting of some seventy defendants. Group two consists of twelve or more defendants and group three consists of seventeen defendants. Group one, excepting two associations, are alleged to be wholesalers, retailers, and manufacturers and dealers in office equipment. Defendants comprising group two are manufacturers, jobbers, and wholesalers of office equipment. Defendants described in group three are retailers of office equipment.

It is further stated that all of the defendants are members of the National Association of Stationers, Office Outfitters and Manufacturers, and that defendants in group two were, and are, members of the Wholesale Stationers' Association of America, both of which associations are made defendants. Defendant Gibbs is general manager of one association and defendant Ogren is in charge of the Chicago office of this association.

It further appears from the complaint that for many years plaintiff was a purchaser of office equipment from the defendants comprising group two as well as from other manufacturers, wholesalers, and jobbers; that the wholesale prices were ascertainable from certain lists, catalogues, and statements of prices occasionally published and distributed

by defendants in group two; that through such publications defendants comprising group two published and represented throughout the United States that they would sell at all times their commodities to whomsoever would buy the same at the prices so listed, and such prices were uniform; that plaintiffs purchased merchandise from said defendants according to the aforementioned method of doing business. Further allegations appear to the effect that defendants mentioned in group one and others organized what is known as the National Association of Stationers, Office Outfitters, and Manufacturers and named certain individuals officers and managers and directors of said association; that all defendants are charged with having caused to be organized certain voluntary organizations where there was a center of distribution of office equipment, which local associations were managed and controlled by officers and directors chosen from the general membership. Plaintiff further alleges that defendants mentioned in the three groups from time to time fixed, issued, published, and promulgated certain recommended retail and resale price lists which purported to state prices at which articles should be resold by retailers.

The complaint alleges that the members and the officers and the directors of the defendants mentioned in group one and the defendants in group two and three were engaged in selling the same kind of merchandise as plaintiff; that defendants in group one and three agreed together to maintain the retail price so published and declared by them, and that thereafter at various times members of all three groups and their officers and agents insisted that plaintiff desist from its practice of reselling said office equipment at less than the published resale prices; that defendants demanded that plaintiff become a member of the National Association and pay the said association the regular initiation fees and dues. Plaintiff alleges its refusal to join the association or to agree to maintain the resale prices fixed by defendants, and further alleged that it sold articles at prices lower than said listed resale prices, and that defendants thereupon conspired and agreed together to injure the plaintiff in its business and property, which said injury was to be accomplished by the defendants in all of the groups in the following manner: (a) By intimidation and by unlawful inducements on the part of defendants in all groups. (b) By refusing to sell, and causing defendant manufacturers of office equipment to refuse to sell plaintiff its needed merchandise.

(c) By refusing and causing various manufacturers, wholesalers, and jobbers of office equipment to refuse to sell plaintiff its necessary merchandise. (d) By defendants refusing and causing various manufacturers, wholesalers, and jobbers to refuse any longer to sell plaintiff said merchandise at prices as low as they were selling, and did sell, to other persons engaged in the same business.

Plaintiff then set forth eighteen overt acts by which damage to plaintiff was disclosed. General damages are alleged and facts are set forth disclosing damages suffered by plaintiff as the direct result of its inability to buy the merchandise excepting at much higher prices than it would have been compelled to pay had it joined the association and maintained resale prices.

The relief sought was a money judgment.

Numerous demurrers were filed, some general and others general and special. Without stating its reasons, the court sustained all the demurrers.

Appellees argue: (1) The gist of the action is conspiracy. The Clayton Act is not a conspiracy act and therefore the cause of action is not one condemned by the Clayton Act. (2) Even if conspiracy came within the purview of the act, the declaration fails to state a cause of action for conspiracy. (3) The complaint fails to show that it was illegal for the manufacturers in question to refuse to sell or allow discounts to plaintiff. (4) The complaint fails to show that the acts complained of had the effect of substantially lessening competition or tended to create a monopoly within the meaning of the Clayton Act. (5) Complaint fails to show plaintiff was damaged by defendants' refusal to sell it the desired merchandise, because no monopoly is shown and it does not appear that plaintiff was unable to procure like merchandise from other sources. The fact that the manufacturers' brands were well advertised does not change the situation. (6) The Clayton Act only applies to discriminations and monopolies "in any line of commerce." Plaintiff's grievance is not limited to a single line of commerce, but to numerous and distinct lines. (7) The complaint is bad for duplicity, in that it joins several causes of action in one count, and because it joins in one count a cause of action based on the violation of the statute and a cause of action based on common law. (8) A large number of persons are jointly sued for the commission of torts which are clearly several. Included among the defendants are numerous persons who could not be sued under the Clayton Act,

to wit, two trade associations not engaged in commerce and individuals not engaged in commerce and that a declaration against two defendants for a cause of action against only one of them is demurrable.

Do the conspiracy allegations appearing in the complaint take the case out of the Clayton Act?

The four pertinent sections of the Clayton Act read as follows (USCA title 15):

12. The word 'person,' or 'persons,' wherever used in sections 12 to 27, inclusive, of this chapter shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country."

13. "Discrimination in price between purchasers. It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly to discriminate in price between different purchasers of commodities, which commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce: *Provided*, That nothing herein contained shall prevent discrimination in price between' purchasers of commodities on account of differences in the grade, quality, or quantity of the commodity sold, or that makes only due allowance for difference in the cost of selling or transportation, or discrimination in price in the same or different communities made in good faith to meet competition: *And provided further,* That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade."

15. "Suits by persons injured; amount of recovery. Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

26. "Injunctive relief for private parties; exception. Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this chapter, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: Provided, That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of chapter 1 of Title 49, Transportation, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission."

In our study of this complaint we accept without question the following propositions:

The allegation of the complaint must, as against a demurrer, be accepted as true. A complaint which states facts sufficient to state a cause of action of which the court has jurisdiction is good as against a demurrer regardless of the form of the pleading or the theory of the pleader. Williams v. U. S., 168 U. S. 382, 18 S. Ct. 92, 42 L. Ed. 509; Taylor v. U. S. (C. C. A.) 2 F.(2d) 444, 447, 448.

To state a good cause of action, of which the District Court has jurisdiction, against the defendants herein, many of whom are residents of the same state as the plaintiff, it is necessary to set forth facts which bring the case within the above-quoted sections of the Clayton Act.

Appellant contends that it has set forth the facts which entitled it to the relief prayed. Appellees contend to the contrary. Their first objection is predicated upon the appearance in the complaint of certain conspiracy allegations. They assert that because of these allegations the action is no longer one under the Clayton Act but is either a common-law action for a conspiracy or an attempt in a civil action to secure a remedy not obtainable in a federal court in a civil action, at least without diversity of citizenship appearing. In short, if we understand their position correctly, it is that the action for damages (section 15) is a statutory remedy and does not extend to any case other than that condemned

by the Clayton Act. That a conspiracy to commit an offense is punishable under the criminal statutes but no federal statute gives to the injured party a cause of action maintainable in the federal court for damages arising from the operation of the conspiracy.

No cases are cited to support this contention. Nor are we able to accept the underlying thought that plaintiff took its case out of the Clayton Act by inserting the conspiracy allegation. Appellant's complaint disclosed a loss which it suffered because of acts committed by the defendants which are condemned by the Clayton Act.

■ These facts appearing, the question arises, may B, who has unlawfully discriminated in prices against A, and who has unlawfully refused to sell its goods to A, because of A's refusal to agree to sell only at a fixed resale price, avoid liability because X, Y, and Z agree and conspire with B to force A into an association, the object of which is the maintenance of a fixed resale price, etc.? We think not. A cause of action is stated against B. A's damage arises by virtue of B's unlawful discrimination in price and its refusal to sell A its merchandise. X, Y, and Z became liable, not because of their refusal to sell A, but because, through their unlawful conspiracy with B, they became liable for B's wrongful act committed on A. There would have been no occasion and no justification for joining the retailer defendants who did not sell appellant excepting as they, through their agreement with B, became the agents and partners of B. B would have been the sole party whose wrongful acts gave A a cause of action but for the action of X, Y, and Z in participating in B's unlawful enterprise. The cause of action did not become one for conspiracy however, but remained one for damages resulting from the doing of acts prohibited by the statute. But the parties liable for the damage were increased through the entry of other parties into the unlawful enterprise. A could have proceeded against B alone for the enforcement of its remedy created by the Clayton Act. But it was not required so to do. It could have joined all of the defendants or such part of them as it saw fit to join upon a showing that these parties, through their conspiracy with B, became jointly liable with B for B's torts.

Carrying the logic a little further and answering certain objections interposed by appellees, it might be said that the defendants (the two associations and the two individuals) who were not, singly and alone, engaged in commerce, engaged in the commerce of B by joining the conspiracy. They thereby became the agents or partners of B. The interstate commerce in which B was engaged thereupon became interstate commerce in which the said association and the two individuals were engaged. Likewise the acts of B which were separate and distinct from the acts of C, D, or E (other wholesalers and jobbers) but of like character, became in each instance the acts of the others because of their being parties to the conspiracy. Each, under the allegations of the complaint, were, as a matter of law, the other's agents or partners. Each became liable to the plaintiff for the action of the other.

This conclusion is strengthened by other considerations. Appellees argue that the conspiracy allegations make this action one for conspiracy. But there exists no civil action for a conspiracy. Jones v. Monson, 137 Wis. 478, 119 N. W. 179, 129 Am. St. Rep. 1082; Wachowski v. Lutz, 184 Wis. 584, 201 N. W. 234; Doremus v. Hennessy, 62 Ill. App. 391; Conner v. Bryce (Sup.) 170 N. Y. S. 94.

■ An action may lie for damages suffered by reason of torts committed pursuant to a conspiracy but no action for damages lies for the conspiracy alone. 5 R. C. L. 1091. The gist of such action is not, as appellees assert, the conspiracy, but it is the damages for which the wrongdoer and all who conspire with him are liable.

Likewise counsel for appellant stated its position clearly when in the complaint it said: "plaintiff * * * complains of * * * defendants of a plea of trespass on the case for the recovery of more than One Hundred Thousand Dollars ($100,000.00) under an act of Congress of the United States, to-wit: 'An Act to supplement existing laws against unlawful restraints and monopolies and for other purposes,' approved October 15, 1914 (38 U. S. Stat. L. 730)."

■ Another of appellees' attacks upon the complaint is based on the improper joinder of a statutory cause of action with one based on the common law. But appellant did not and could not, write a cause of action for conspiracy and therefore there are not two causes of action stated in the complaint. Appellant not only stated but one cause of action, but expressly stated its intention to so limit itself. That cause of action is for damages, the recovery of which is authorized by section 15 for acts condemned by section 13 and is directed against the wrongdoers and their agents and their partners who joined the tort-feasors in committing the wrong upon appellant.

(2) Appellees' objection that the complaint fails to state a good cause of action for conspiracy needs no further discussion. Not being an action for conspiracy and no action for a conspiracy, as such, being maintainable, it is idle to examine the complaint to test its allegations by the standards of an alleged good complaint for conspiracy.

The objection that the complaint fails to show the defendant manufacturers wrongfully refused to sell plaintiff or wrongfully discriminated against it is answered by an examination of the facts alleged. True, it is not every discrimination in price that is condemned. Nor is every refusal to sell a violation of the buyer's right. The two exceptions appear in section 13, above quoted. But to argue, in the face of the facts alleged, that defendants' failure to sell and their discriminations in price against plaintiff were within the statutory exceptions, borders on the absurd. It would not have been necessary in this complaint to expressly negative the exceptions appearing in said section 13. Nevertheless, plaintiff's affirmative allegations of defendants' alleged wrongdoing do necessarily, though impliedly, negative these exceptions.

Appellees further object to the complaint because it does not appear that the effect of the discrimination or the refusal to sell, substantially lessened competition or tended to create a monopoly within the meaning of said section 13. It was not necessary that the effect be to create a monopoly. The language of the statute is that the "effect * * * may be to * * * tend to create a monopoly in any line of commerce." The word "or" as used in section 13 cannot be ignored. If the effect of such discrimination is to substantially lessen competition, there is no necessity for plaintiff to establish the alternative, to wit, that the effect tended to create a monopoly. Likewise if the effect was to "tend to create a monopoly" it would not be necessary to show that such effect "substantially lessened competition."

The elimination of plaintiff as a competitor in this line of commerce would necessarily tend to a certain extent to create a monopoly and also to substantially lessen competition.

Counsel for appellees seek to apply the tests of invalidity laid down in the Sherman Act (15 USCA §§ 1-7, 15). But the test of liability defined in the Clayton Act is different from, and was intended for a different purpose than that stated in the Sherman Act. Standard Fashion Company v. Magrane-Houston Company, 258 U. S. 346, 42 S. Ct. 360, 66 L. Ed. 653; United Shoe Machinery Corp. v. United States, 258 U. S. 451, 459, 42 S. Ct. 363, 66 L. Ed. 708.

Without setting forth all of the facts which appear in the complaint, it may be said that the allegations of the complaint were sufficient, if established, to justify a verdict by the jury, or a finding by the court, that the effect of the discrimination and the refusal to sell not only tended to create a monopoly but also to materially lessen competition. In short, the allegations are sufficient to support a verdict or a court's finding that defendants' action (their discriminations) would probably result in lessening competition to a substantial degree, which is the test laid down in Int. Shoe Co. v. Fed. Trade Com., 280 U. S. 291, 50 S. Ct. 89, 74 L. Ed. ——.

The objection that appellant and the appellees are not engaged in the same line of commerce is sufficiently answered by the opinion in George Van Camp & Sons v. American Can Company, 278 U. S. 245, 49 S. Ct. 112, 73 L. Ed. 311, 60 A. L. R. 1060.

Accepting as we do the conclusion heretofore reached that each of the defendants became the agent of the others in carrying out the tort which the other committed upon appellant, the conclusion is inescapable that all parties were engaged in the same "line of commerce."

The objection to the complaint that it improperly unites distinct and separate causes of action presents the most serious question raised by the demurrers. Obviously A, who has a good cause of action against B for acts committed in violation of section 13, cannot join similar but separate causes of action against C and make B and C defendants in the one action. It is only by virtue of C's adopting B's acts and by B's adopting C's acts (through their agreement, combination or conspiracy) that appellant may hold B and C jointly and severally for the acts of each.

But does it follow that because each is liable for the others torts that A may in one action enforce both liabilities? We think it tolerably clear that A may join in the same action one cause of action against B (arising out of a violation of section 13) with another action against B for a different violation of said section 13. And if B and C were copartners in fact, and, as such copartners committed the two condemned acts mentioned in the preceding sentence, they both would be liable and suable in one action. But whether they may be so sued where instead of B and

C being copartners in fact they are, by virtue of the conspiracy liable to A as partners and agents, is a somewhat different question. On the other hand, we are faced with the query, should the court compel separate actions against joint tort-feasors for their separate torts? It would seem not. Section 15 gives a remedy to the injured party for the wrongs committed against him.

The right to pursue all redressable wrongs in one action is not limited by the statute and is subject only to the limitations defined by the decisions governing joinder of actions. In the somewhat analogous case of trespass where B and C cut timber on A's land at various times, A is permitted in one action against both parties to recover for the various torts. Inasmuch as for all legal purposes each tort here charged was committed by all of the defendants it would seem that plaintiff should be permitted to join in the one action for damages the various torts committed.

4233. The grounds of the motion to dismiss the equity suit are largely the same as those advanced and heretofore considered as reasons for sustaining the demurrers in the law action. They need not be restated or reconsidered. The additional reasons advanced for sustaining the motion to dismiss in the equity suit are directed largely to the extent of the relief sought. It is elementary, however, that an order of dismissal cannot be sustained simply because the pleader sought more relief than he is entitled to upon the facts stated. Section 26 above quoted expressly authorized injunctive relief to any person threatened with special injury from an unlawful combination violative of the act. Duplex Company v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196; United Leather Workers' International Union v. Herkert & Meisel Trunk Co. (C. C. A.) 284 F. 446; Moore v. N. Y. Cotton Exchange, 270 U. S. 593, 46 S. Ct. 367, 70 L. Ed. 750, 45 A. L. R. 1370; General Electric Company v. Minneapolis Electric Lamp Co. (D. C.) 10 F.(2d) 851.

On this appeal we are not concerned with the extent or the terms of the injunctive relief which may be granted if the allegations of the bill are sustained. It is sufficient for the purposes of this appeal to sustain the bill on the ground that the facts stated entitle appellant to some injunctive relief.

The judgment in 4232 and the decree in 4233 are both reversed, with direction to proceed in accordance with the views here expressed.