JANISCH and others, Respondents, vs. SMITH and others, Appellants.

*March 9—July 12, 1949.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Richard S. Gibbs* of counsel, all of Milwaukee, for Alva T. Smith and the Alva T. Smith Company, and by *George H. Moeller* of Milwaukee, for the Dunck Tank Works, Clarence Dunck, and Fred Dunck, and by *Joseph F. Schoendorf* of Milwaukee, for the Wisconsin Can Company, and by *Mathew Horwitz* of Milwaukee, for the Litho-Metals Wares, Inc., and David P. Cohn, and oral argument by *Mr. Moeller, Mr. Gibbs,* and *Mr. Schoendorf.*

For the respondents there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

FRITZ, J. Briefly stated, the allegations in plaintiffs' complaint, so far as here material, are to the following effect:

Prior to March 12, 1945, the plaintiff Maximillian P. Janisch (hereinafter referred to as "Janisch"), had invented a minnow bucket with new and novel features to prolong the lives of minnows used as bait; and by an application known as serial No. 582-205, he had applied for letters patent thereon, and had assigned rights and interests as co-owners therein to the other plaintiffs, Bride B. Janisch and Myra J. Hess. Janisch discussed and made known his invention of the bucket to Dunck Tank Works (hereinafter called "Dunck") through its officers, Clarence and Fred Dunck, who represented to Janisch that Dunck had fifty years of experience in manufacturing and had experienced men and a source of some supply of metal and could and would manufacture and sell the bucket in an efficient and proper manner. Unknown to Janisch, Dunck lacked such facilities and technical ability. In reliance, however, upon such representations, Janisch disclosed to Dunck many confidential and pertinent facts and data in reference to the bucket and was induced by Dunck to contract in writing on October 10, 1946, with Dunck for its

manufacture and selling of the bucket. By said contract Janisch sold and assigned to Dunck the exclusive right to manufacture and sell in the United States the bucket covered by said application for letters patent; and Dunck agreed that in consideration of such rights, it would pay plaintiffs a royalty of twenty-five cents for every bucket sold and would use its best efforts in the advertising, promotion, and sale of the bucket; that in order to retain said exclusive rights, it would sell a minimum of one thousand buckets during the first year, and twenty thousand each succeeding year during the life of that contract, and in the event of its failure so to do, Janisch would have the option of terminating the contract; and if Dunck desired to retain said exclusive rights, it in turn could retain them from year to year by paying plaintiffs royalties at the rate of twenty-five cents per bucket on the guaranteed annual minimum sales; that Dunck agreed to provide working capital to guarantee adequate advertisement, promotion, and demonstration and solicitation for the sale of the bucket and devote its best efforts to the carrying out of the contract; and that commencing on January 5, 1946, and semiannually thereafter, Dunck would furnish to Janisch in writing a detailed account of all sales covering such patented bucket and would pay said royalties on such sales.

That Janisch continued to devote his time and efforts in his performance of the contract and voluntarily performed services to assist in the production and sale of the bucket and disclosed to the Duncks much confidential information in relation thereto before Janisch discovered Dunck's misrepresentations as to its ability to manufacture, distribute, and sell the bucket; and that unknown to Janisch, Dunck had contacted David P. Cole (who was doing business as the David Products Company and who controlled the Wisconsin Can Company and Litho-Metal Wares, Inc.) and arranged with Cole for the manufacture of parts of the bucket and Janisch then disclosed confidential information in relation thereto to Cole, the Wis-

consin Can Company, and the Litho-Metal Wares Company. That about November 15, 1945, Clarence Dunck introduced the defendant Alva T. Smith to Janisch and represented to him that Smith was a man of integrity and worthy of Janisch's trust and confidence and was possessed of special knowledge and experience and ability in reference to marketing and selling and making known to the public such articles as the said bucket, and that Dunck, by reason of Smith's special knowledge, skill, and experience, had granted to Smith the exclusive right to sell and distribute the bucket; that Smith would be considered, as a participant with Janisch and Dunck and Smith, entitled to receive from Janisch all information, confidential and otherwise, in reference to the manufacture of the bucket; and Dunck requested and instructed Janisch to cooperate and furnish Smith with any information he might require or desire from Janisch.

That Janisch, relying upon Dunck's assurances as to the ability, integrity, and character of Smith, and having complete confidence in Dunck and its officers, and by reason of their representations had complete confidence in Smith and divulged information to him which otherwise he would not and could not have obtained, but which was obtained by him due to the fiduciary and confidential relationship existing between Smith, Dunck, Clarence Dunck, Fred Dunck, and Janisch. That Smith immediately made suggestions for the pretended better and more efficient consummation of said undertaking and gave orders to Dunck employees in reference to the methods of manufacturing and handling the bucket and the price thereof, to all of which Janisch acquiesced because of his reliance upon the representations made by said defendant that the undertaking was a joint enterprise, and that they were all in the undertaking together for their common good. That by reason thereof Janisch, at defendants' request, consented to certain changes in the construction, name, and price of the bucket and to permitting upon the descriptive advertising

thereof the statement that Smith was the exclusive distributor of the bucket. That as a result of the fiduciary relationship between the defendants and Janisch, he did, prior to the time the bucket was placed upon the market, and before the new and novel features of Janisch's invention were known to the public, disclose and make known to defendants said facts and information in relation to the bucket, including drawings, specifications, samples of the invention, and other confidential matters.

That unknown to plaintiffs, Dunck, Clarence and Fred Dunck, and Smith entered into a conspiracy with intent to harm and damage plaintiffs and discredit the bucket, and proceeded on a course of action which was unsatisfactory and detrimental to plaintiffs in order to deprive them of their interest in the profits to be derived from the bucket, and pursuant to said conspiracy defendants commenced a campaign to belittle the merits of the bucket and failed to cause it to be made in a workmanlike manner, and that by reason of such failure on the part of defendants plaintiffs notified defendants on April 8, 1946, that plaintiffs might exercise their right of revocation because of Dunck's failure to perform its contract with Janisch; and upon plaintiffs believing representations made by Clarence and Fred Dunck that Dunck had completely ceased the manufacture of the bucket, plaintiffs on June 27, 1946, settled with Dunck for royalties due plaintiffs as of that date, and Dunck paid the amount thereof to plaintiffs as final payment of royalties due plaintiffs to that date. That meanwhile Dunck, Clarence Dunck and Fred Dunck, and Smith had secretly and surreptitiously arranged to enter into an agreement with defendants David P. Cole and Wisconsin Can Company to manufacture the bucket with dies theretofore used in the manufacture thereof; that they were then engaged in the secret production of the bucket, and the entire output was delivered to Alva T. Smith Company and Smith or his company was paying secret commissions to Dunck or its officers, and David P. Cole was likewise paying secret com-

missions to Dunck or its officers. That Smith and Alva T. Smith Company and David P. Cole, Wisconsin Can Company and Litho-Metal Wares Company had the secret information which they had received in confidence from Janisch and knew of plaintiffs' interest in the bucket when defendants conspired to obtain the rights thereto; and pursuant to their conspiracy, some of them made application for improvement patents which were based upon the ideas of Janisch and his confidential disclosure thereof to defendants.

Plaintiffs allege they have been damaged in the sum of $250,000 as the result of defendants' wrongful acts pursuant to their conspiracy; that plaintiffs are entitled to have enjoined the further manufacture, distribution, and sale of the buckets by defendants, and to have an adjudication that all improvements belong to plaintiffs; and that defendants account for all profits derived from the bucket, and to turn over to plaintiffs all assets and information in connection with the manufacture, distribution, and sale thereof.

On this appeal defendants contend that the facts thus alleged in the complaint are insufficient to show the existence of a civil conspiracy between the defendants. That contention cannot be sustained. Without discussing in detail said facts and purported and alleged consequences thereof, it suffices to note that by false and fraudulent misrepresentations of Dunck and its officers as to their facilities and experience in manufacturing and selling, Janisch was induced to enter into a contract with Dunck under which, in consideration of Janisch assigning to Dunck the exclusive right to manufacture and sell the minnow bucket invented by Janisch, Dunck was to provide the working capital and manufacture in an efficient manner, and use its best efforts in advertising and selling the bucket invented by Janisch, and was to pay plaintiffs a prescribed royalty on specified quantities of buckets. Instead of Dunck duly performing that contract, Dunck contacted the defendants Cole and Smith to have the corporation controlled by Cole manufacture parts of the bucket and have the corporation controlled by

Smith market and sell the buckets, and Dunck wrongfully induced Janisch to disclose to the other defendants confidential information and data in reference to the manufacture of the bucket which they could not have obtained except for the fiduciary and confidential relationship between the parties. Unknown to plaintiffs the defendants secretly entered into a conspiracy to harm and damage plaintiffs by causing the bucket to be made in an unworkmanlike and defective manner and thereby belittle and discredit the bucket in order to cause plaintiffs to terminate their contract with Dunck and deprive plaintiffs of their interest in the profits to be derived from the sale of the buckets. And at the time plaintiffs terminated the contract with Dunck because of its breach thereof, Cole and the Wisconsin Can Company were secretly manufacturing and delivering the entire output of the buckets to Alva T. Smith Company and it or Smith, and likewise Cole or the Wisconsin Can Company were secretly paying commissions to Dunck or its officers.

In view of the above-stated facts alleged in the complaint, which are deemed admitted upon defendants' demurrers, the damages which plaintiffs seek to recover in this action can be considered to have been sustained by them as the result of the conspiracy and concerted wrongful and deceitful acts and conduct of the defendants in the respects and for the purposes alleged in the complaint. If because of such acts and conduct Dunck failed to perform its obligations under its contract of October 10, 1946, with plaintiffs, a cause of action is stated as to all defendants who are alleged to have participated in the conspiracy and their concerted acts and conduct which contributed to causing the alleged resulting damages to plaintiffs. *Boyce v. Independent Cleaners, Inc.,* 206 Wis. 521, 240 N. W. 132; *Fountain Spring Park Co. v. Roberts,* 92 Wis. 345, 66 N. W. 399.

As stated in *Martin v. Ebert,* 245 Wis. 341, 344, 13 N. W. (2d) 907:

"The gist or gravamen of a civil action for conspiracy is not the conspiracy itself but is the civil wrong which is done pursuant to a conspiracy and which results in damage to the plaintiff. *Wachowski v. Lutz* (1924), 184 Wis. 584, 594, 201 N. W. 234."

Therefore the order overruling defendants' demurrers must be sustained.

*By the Court.*—Order affirmed.