ARTHUR W. BLAKE & another, executors, *vs.* TRADERS' NATIONAL BANK.

Suffolk.   March 14, 15. — June 30, 1887.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

A trustee pledged to a bank certain shares of stock belonging to a trust estate as security for the payment of a debt due from him to the bank, the certificate and the assignment of the shares showing that it was held in trust. The bank was subsequently organized as a national bank, received the shares, and, at the request of the trustee, sold the shares and applied the proceeds on the debt, the trust estate receiving no benefit therefrom. The trustee was removed and a new trustee appointed in his place. A surety on the original trustee's bond was compelled, in an action upon the bond, brought in the name of the judge of probate, to pay to the trust estate the value of the stock. *Held,* that the surety was subrogated to the rights of the new trustee and of the *cestuis que trust,* and could maintain a bill in equity against the national bank to recover the amount so paid by him.

A. became a surety on a trustee's bond in 1855. The only account rendered by the trustee in the Probate Court was allowed in 1856, but he from time to time rendered accounts to the *cestuis que trust,* and paid to them the balances appearing to be due. In 1858, A. received from the trustee certain security, which was believed by all parties to be ample, and which A. surrendered upon being discharged from the probate bond in 1869. In 1864, the trustee pledged to a bank certain stock belonging to the trust estate as security for the payment of a debt due from him to the bank. The certificate and assignment of the stock showed that it was held in trust. In 1867, the bank, at the request of the trustee, sold the stock and applied the proceeds on the debt, the trust estate receiving no benefit therefrom. The trustee was afterwards removed, and a new trustee appointed in his place. It appeared by the accounts rendered by the original trustee that the stock was held by him, and the *cestuis que trust* did not know of the breach of trust until August, 1877. In November, 1877, before the removal

of the original trustee, an action was commenced upon his bond by order of the Probate Court for the benefit of the *cestuis que trust*, which was prosecuted by the new trustee. A. defended the action, on the ground that he had been released as surety, but judgment was rendered against him, in 1882, for the penal sum of the bond ; and execution issued for the value of the stock, which was paid by A. In 1884, after such payment, A. brought a bill in equity against the bank to recover the amount so paid by him. *Held*, that the statute of limitations was not a bar to the suit; and that there was not such laches as would prevent A. from recovering.

W. ALLEN, J. In 1855, the plaintiffs' testator became a surety upon the probate bond of a trustee. In 1864, the trustee pledged certain stocks, a part of the trust estate, to the Traders' Bank, to secure a debt due from the firm of which he was a member. In 1865, the Traders' Bank was organized as the Traders' National Bank, the defendant, and received the stock in question, the debt not being paid. In 1867, the defendant, at the request of the trustee, sold the stock and applied the proceeds on the debt. The certificate and the assignment showed that the stock was held in trust. The trust estate received no benefit from the pledge or the sale of the stock. The trustee was afterwards removed, and new trustees were appointed in his place. Before the removal of the trustee, suit was commenced against the plaintiffs on the bond, which was prosecuted after the appointment of the new trustees, and judgment recovered, upon which execution issued for the value of the stocks, among other things, and the judgment was paid by the plaintiffs. These facts show that the defendant received and sold the stocks, with notice of the trust, and was liable to the new trustees, and to the *cestuis que trust* for the avails. *Shaw* v. *Spencer*, 100 Mass. 382. *Loring* v. *Brodie*, 134 Mass. 453. *Montreal Bank* v. *Sweeny*, 12 App. Cas. 617.

The general rule, as stated by Lord Brougham in *Hodgson* v. *Shaw*, 3 Myl. & K. 183, 190, is, "that the surety paying off a debt shall stand in the place of the creditor, and have all the rights which he has, for the purpose of obtaining his reimbursement." In this case, the judge of probate was the obligee in the bond which constituted the debt, but it was for the benefit of the trust estate, and the legal and beneficial owners of that estate were the real creditors, to whose rights the surety would be subrogated on paying the debt. It is true that the trustees elected to pursue their remedy upon the bond against the surety,

and neither the trustees nor the *cestuis que trust* would have a right of action against the defendant, after full indemnity had been obtained in the action on the bond; but there was no other election of remedy, or discharge or satisfaction of a cause of action, than is always the case when a creditor who holds collateral security for a debt gets satisfaction from a surety of the debtor. The surety takes the place of the creditor as to the debt, and as to the security. See cases cited in notes to *Dering* v. *Winchelsea*, 1 White & Tudor's Lead. Cas. in Eq. (6th ed.) 114. If, as is argued, the original trustee had no right of action against the defendant, and the stock was not his property, and was not pledged by him as security for the debt which the plaintiffs paid, and if the defendant was only liable to the new trustees as holding, or for having converted, the trust fund, and if the fund was made good by the payment to the trustees by the surety, it would make no difference. The payment was to the trustees, and was a substitute for the fund which was in the hands of the defendant, and which it was bound to account for to the trustees, and would give to the surety all the rights which the trustees had to recover the fund; it would operate as an assignment to the surety of the fund, and of the right of action of the trustees to recover it. In this case, the defendant and the surety were both liable to the trustees for the amount of the trust property; the former, in consequence of participating in the wrongful act of the first trustee; and the latter, by his contract to indemnify the estate against such act. The cases are analogous where one owner of property has claims for a loss against an insurer and a tortfeasor. The insurer is in the nature of a surety, and, upon paying the loss, he is subrogated to the rights of the owner to recover for the tort. *Hart* v. *Western Railroad*, 13 Met. 99. *Clark* v. *Wilson*, 103 Mass. 219. *Mercantile Ins. Co.* v. *Clark*, 118 Mass. 288. The cases cited in Sheldon on Subrogation, § 89, sustain the proposition in the text, that, "where the sureties of a trustee have been compelled to answer for his breach of trust, they are subrogated to the rights of both the trustee and the *cestui que trust* against those who have participated in his wrongful acts."

The defendant bank contends that the right of action to which the surety was subrogated was barred by the statute of

limitations. The bank took the stock charged with the trust, and it held the specific property, and the proceeds of the sale of it, as a trust fund, under a trust to return it to the trustees. The trustees and *cestuis que trust* both had an equitable remedy against it as such trustee. This remedy would not be affected by the statute of limitations. · 1 Perry on Trusts, § 217. 2 Ib. § 828.

Whether an action of tort for the conversion of the stock would be barred, we need not consider. If the trustees could have elected to sue the defendant for damages for the sale and conversion of the stock, they did not do so, and no question arises as to the effect of such election upon the right of the trustees or of the *cestuis que trust* to treat the proceeds of the sale as trust money to which they were entitled. Their right of action against the defendant to compel it to account for and restore trust property which it knowingly received and withheld, is a right to which a surety on the bond, who was compelled to make good the amount to the fund, would be subrogated.

It is contended that there was such delay and laches on the part of the plaintiffs, and of those under whom they claim, as to prevent a recovery. The surety was released from the bond by order of the Probate Court, on May 9, 1869. The only account rendered ·by the trustee in the Probate Court was allowed on December 8, 1856, but he from time to time rendered accounts to the *cestuis que trust*, and paid to them the balances appearing to be due. It appeared by these accounts that the stock in question was held by the trustee, and the *cestuis que trust* did not know of the breach of trust until August, 1877. In November, 1877, a suit on the bond was commenced against the plaintiffs, by order of the Probate Court, for the benefit of the *cestuis que trust*. The plaintiffs defended this action, on the ground that the surety had been released, but judgment was rendered for the plaintiff for the penal sum of the bond, in March, 1882. The amount for which execution should issue was not fixed until after this bill was brought. Before then, namely, on June 27, 1884, the plaintiffs had paid to the trustees the amount claimed from the defendant, and they have since paid the whole amount found due upon the bond. This bill in equity was filed on June 27, 1884.

There was not such laches on the part of the *cestuis que trust* in failing to have the trustee summoned to render an account in the Probate Court, as would prevent them from following the fund in the hands of the bank. They had no reason to suppose that everything was not right until August, 1877. Soon after that, the action on the bond was commenced. Neither they nor the trustees lost one remedy by not pursuing both at the same time. The plaintiffs were justified in the delay necessary to defend that suit, and, within a reasonable time after their liability was declared, they brought this bill. The delinquent trustee was removed, and new trustees were appointed, on July 1, 1878. The new trustees found the suit on the bond pending, and there was no occasion for them to take any further steps. It does not appear that the delay has been unreasonable, or that it has been any detriment to the defendant bank; and it would be inequitable to deprive the plaintiffs of their remedy on account of it.

In 1858, the surety received from the trustee security in the form of the bond of one Bacon for $50,000, which he surrendered when he was discharged from the probate bond in 1869. There is no doubt that this surrender was made in the belief that there had been no breach of the bond, and that the surety was not liable upon it. There is nothing in the evidence to show the value of the bond when it was surrendered, except the statement, referring to the time when the security was received, that it was believed by all parties to be ample. The surety did not stand in the relation of a co-surety with the defendant, and there was no misconduct or negligence by him in regard to it shown.

On the whole, the plaintiffs are entitled to recover from the defendant bank the amount for which the stock was sold by it, with interest from the time of the sale.

*Decree for the plaintiffs.*

*M. Storey*, for the plaintiffs.

*E. R. Hoar & H. G. Parker*, for the defendant.