# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—AUGUST TERM, 1895.

## Elias B. Stokes v. Iverson M. Little and Others.

1. COUNTY TREASURER—*Misappropriation of Public Moneys.*—The tortious application of moneys by a partner, held by him as county treasurer, to the use of the partnership, with the knowledge of his co-partners, is sufficient to create the relation of debtor and creditor between the partners and the county, so as to authorize the latter to maintain an action in assumpsit for moneys had and received for the county's use.

2. SUBROGATION—*Rights of Sureties—Priority of Payment.*—Sureties on a county treasurer's bond, who have been compelled to pay to the county moneys used by the treasurer in a partnership in which he was a member, and by the knowledge and acquiescence of his co-partners, will be subrogated to the rights of the county as to all securities turned over to the county by such partnership, and the payment of the claims of such sureties should have priority out of the partnership assets over the claims of the members of the firm.

3. EQUITY PRACTICE—*Conditions Imposed upon the Right to Dismiss.*—In the absence of a cross-bill a complainant may, in general, dismiss his bill, but where by agreement of the parties the complainant has received moneys from various sources connected with the litigation, to be held by him until the rights of the parties are settled by a decree, the court should not permit him to dismiss his bill without returning the money.

4. SAME—*No Affirmative Relief Without a Cross-Bill.*—Affirmative relief can not be decreed in a chancery proceeding without a cross-bill.

5. CROSS-BILL—*By Sureties—Subrogation.*—A cross-bill is necessary to enable sureties, when parties defendant in a chancery proceeding, to enforce a right of subrogation.

(255)

**Bill for Relief,** injunction and receiver. Appeal from the Circuit Court of Fayette County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the August term, 1895. Reversed and remanded with directions. Opinion filed June 18, 1896.

ANTHONY THORNTON and HENRY & GUINN, attorneys for appellant.

Affirmative relief will not be granted unless asked for by cross-bill, whatever the evidence may be on the hearing. Smith v. West, 103 Ill. 341; White v. Whitten, 103 Ill. 439; Ogle et al. v. Koerns et al., 140 Ill. 170; Ashmore v. Hawkins, 145 Ill. 447; Jackson v. Sackett, 146 Ill. 646.

Not even if the answer should ask it. Ballance v. Underhill, 3 Scam. 461; McConnell v. Hudson, 2 Gilman, 649; Mason v. McGirr, 28 Ill. 324.

Appellant had the right to dismiss his suit as to any of the defendants at any time before decree entered where no cross-bill was filed. Secs. 1 and 36, Chap. 22, Revised Statutes; Mahlen v. Wilbur, 74 Ill. 164; Reilly v. Reilly et al., 139 Ill. 180.

When is a decree entered? 2 Daniel's Practice, 670; Hughes v. Washington, 65 Ill. 245.

A rule must be taken to answer a cross-bill, or it will be taken as abandoned. Purdy v. Hensbill, 97 Ill. 391.

There can be no right of subrogation against the firm of Little & Stokes under any state of pleading in this case. Subrogation is defined to be the substitution of another person in the place of the creditor, to whose right he succeeds in relation to the debt. Bouvier's Law Dictionary.

The American and English Encyclopedia adds to this definition the words "or claimant," after the word "creditor," in Bouvier. See Vol. 24, p. 187.

There could be no relation of debtor and creditor existing between the county and Little & Stokes, because Little was prohibited by law from that use of the county funds. Secs. 4, 9 and 16, Chap. 36, R. S.; Cin. Mut. H. A. Co. v. Rosenthal, 55 Ill. 92; Penn v. Browning, 102 Ill. 530; Banking Co. v. Routenburg, 103 Ill. 402; U. N. Banking Co. v. L. N. A. Railway Co., 145 Ill. 227; Goodrich v. Tenny, 144 Ill. 430.

There could be no action for money had and received.

Bloomer v. Denman, 12 Ill. 244; 1 Am. & Eng. Ency. 887; Miller v. Watson, 5 Cow. 195.

As to when and how subrogation may be had.   Bishop v. O'Conner, 69 Ill. 431; City Nat. Bank v. Dudgeon, 65 Ill. 16; Richardson v. Crawford, 94 Ill. 173; Rice v. Rice, 105 Ill. 204; Hooker v. Richardson, 115 Ill. 447; Junker v. Rush, 136 Ill. 180.

Farmer & Brown and J. G. Wills, attorneys for appellees.

Complainant's motion to dismiss his bill was properly overruled.   2 Story Eq. Jur., Sec. 1523; McConnell v. Swales, 2 Scam. 576; Garrick v. Chamberlain et al., 97 Ill. 620; Howe v. Harroun, 17 Ill. 494; Prindiville v. Leon, 11 Ill. App. 657.

Repayment to county could have been made only in actual cash.   17 Am. & Eng. Ency. of Law, 1072, 1073; Berry v. Hanley, 1 Scam. 468; Munsell v. Temple, 3 Gil. 93; Cawley v. People, 95 Ill. 249.

Little & Stokes were debtors of and liable to Fayette county for money used in the firm.   Assumpsit will lie for money tortiously received.   1 Am. & Eng. Ency. of Law, 883, note 2; Dumond v. Carpenter, 3 Johns. 183; Ripley v. Geltson, 9 Johns. 201; DeClerq v. Mungin, 46 Ill. 112; 1 Am. & Eng. Ency. of Law, p. 888, Sec. 11.

Little & Stokes were indebted to the county; and the bondsmen of Little were also liable in case Little & Stokes failed to pay, therefore, in equity, the same as sureties for Little & Stokes.   This created a liability which equity, through subrogation, would recognize.   Hook v. Richeson, 115 Ill. 431; Richeson v. Crawford, 94 Ill. 65; Foss et al. v. City of Chicago, 34 Ill. 488; Rice v. Rice, 108 Ill. 199; Moore v. Topliff, 107 Ill. 241; Friberg v. Donovan, 23 Ill. App. 58; Hough v. Ætna Life Ins. Co., 57 Ill. 318; Young v. Morgan, 89 Ill. 190; Fogarty v. Ream, 100 Ill. 366; Darst v. Bates, 95 Ill. 493; Lochmeier v. Fogarty, 112 Ill. 572; 24 Am. & Eng. Ency. of Law, title Subrogation; Brandt on Suretyship and Guaranty, Sec. 260–278 inclusive.

No one will be permitted to take advantage of his own wrong. Relief may be granted upon terms. Farwell v. Harding, 96 Ill. 32; Gage v. Du Puy, 137 Ill. 652; Phelps et al. v. Harding, 87 Ill. 442; Gage v. Caraher, 125 Ill. 447; Gage v. Nichols, 112 Ill. 269; Alexander et al. v. Merrick et al., 121 Ill. 606; Story's Eq. Jur., Vol. 1, Secs. 301 and 693.

The evidence shows Stokes knew of and consented to the use of county moneys in the firm business. But even if he had not known it, the fact of such use would make the firm liable, nevertheless. Durand v. Rogers, 87 Ill. 508; Kenney v. Foot, 95 Ill. 99; Wolf v. Mills, 56 Ill. 360; Loomis v. Barker, 69 Ill. 360; Schwabacker et al. v. Riddle, 84 Ill. 517; 1 Lindley on Partnership, star pp. 143 and note; 149–150 and note, 151 and note, 152, 153 and note; Parsons on Partnership, 150; 17 Am. & Eng. Ency. of Law, 1065, 1070.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

Appellant Stokes and appellee Little were partners engaged in merchandising, and Little was the treasurer of Fayette county. Stokes was a farmer, and the active management of the firm's affairs was in the hands of Little, who used moneys from the county treasury in the partnership business, for which he executed due-bills to himself as county treasurer, signing them with the firm name. There is a conflict of the evidence as to whether or not Stokes was aware of this misuse of the county's funds; but the evidence is sufficient to sustain the chancellor's finding that Stokes had knowledge of the fact at the time and acquiesced in his partner's violation of the law in the interests of the partnership.

This tortious application of moneys held under a public trust was sufficient to create the relation of debtor and creditor between the partners and the county so as to authorize the latter to sue the former in assumpsit for moneys had and received for the county's use. Taylor v. Taylor, 20 Ill. 650; Duncan, Sherman & Co. v. Niles, 32 Id. 532; DeClerq v. Mungin, 46 Id. 112; Belden v. Perkins, 78 Id. 449; Barnes v. Johnson, 84 Id. 95; Laflin v. Howe, 112 Id. 253.

In 1888 the partnership was dissolved, and in 1890 Little assigned the due-bills to one of the sureties on his bond, and executed and delivered to all of the sureties mortgages on his interest in certain tracts of the partnership real estate to indemnify them against loss as such sureties. Afterward the sureties were compelled to pay the county the amount of moneys used by Little in the partnership business as above stated.

Under this statement of the facts, it is clear that the sureties were subrogated to the rights of the county against the partnership. The chancellor, after setting aside the mortgages, and ordering the partnership lands to be sold by the receiver, very properly decreed that the claims of the sureties should have priority of payment out of the partnership assets. The only other creditors were the partners themselves, who had paid divers claims against the partnership, and had thus become creditors of the partnership. In equity and good conscience, the partners should be required to pay the moneys wrongfully taken from the public treasury for their private business, before they should be permitted to reimburse themselves for moneys paid out by them on ordinary partnership business. Without doubt, the equity of the innocent sureties is superior to that of the offending partners in the distribution of the partnership assets. Gordon's Estate, 11 Phila. 136; Bennett's Estate, 13 Id. 331.

But it is said that after the findings of the chancellor had been announced, and before the decree had been signed or entered of record, appellant asked for leave to dismiss his bill as to all of the defendants except Little, and to dismiss all portions of the original and supplemental bills pertaining to the mortgage liens mentioned therein, whereby all questions of subrogation would have been eliminated from the record. There was no cross-bill on file and it would seem, as a matter of first impression, that leave to dismiss should have been granted.

But the circumstances of this case are exceptional. By agreement of parties, the mortgages in favor of the sureties had been released, the partnership real estate described

therein had been sold, and moneys of the partnership amounting to about $5,000 had been paid by the receiver to the complainant, Stokes, to be used by him until the rights of the parties should be determined by a decree. To have permitted the complainant to dismiss his bill under these circumstances, without returning, or offering to return, the money thus obtained, would have been to give him a most unconscionable advantage. Nor is this view of the matter affected by the fact that the complainant had given bond for the return of the money if that should be ordered, for no court of equity would drive the sureties, in such a case, to an action on the bond in a court of law.

Furthermore, the authorities relied upon by appellant, hold no more than that the complainant may dismiss *on payment of the costs*, and no offer to pay the costs was made in this case. Reilly v. Reilly, 139 Ill. 180.

We are of the opinion, however, that the chancellor erred in decreeing affirmative relief to the sureties without a cross-bill. It is an easy task to prepare and file a cross-bill, and if a defendant who seeks for affirmative relief neglects or refuses to do so, he must charge the loss to his own negligence or contumacy.

Certain decisions are cited in which it is held that a court of equity, in setting aside a void tax sale as a cloud upon title, will require the complainant to refund the amount paid by the purchaser at the tax sale, as well as subsequent taxes paid to protect the purchase, and interest thereon. Gage v. Nichols, 112 Ill. 269; Alexander v. Merrick, 121 Id. 606; Gage v. DuPuy, 137 Id. 652.

But these cases are not analogous to the case at bar. In the case before us the sureties are declared to be absolute creditors. It is not ordered that any payment be made as a condition precedent to the release of the mortgages, but the mortgages are released, the tracts of real estate sold, and the proceeds turned over to the sureties in payment of claims arising from an alleged right of subrogation which existed before the mortgages were made. The mortgages cover but half of the partnership real estate, while the de-

cree applies the whole of it to the payment of the claim of the sureties. This is an unreasonable extension of the application of the maxim that he who seeks equity must do equity. A cross-bill is necessary to enable the sureties to enforce this right of subrogation.

The decree is reversed and the cause is remanded for proceedings in harmony with this opinion.