Jones, County Judge, Respondent, vs. Mehlberg, Defendant: United States Fidelity and Guaranty Company of Baltimore, Maryland, Appellant.

*March 6—April 3, 1934.*

*Allan V. Classon* of Oconto, for the appellant.

For the respondent there was a brief by *Eberlein & Larson* of Shawano and *Megan & Megan* of Oconto, and oral argument by *M. G. Eberlein.*

FRITZ, J. On this appeal from a judgment for the recovery from the United States Fidelity & Guaranty Company, as surety on an administrator's bond, of $5,000 and interest, for which A. H. Mehlberg, as administrator of the estate of Samuel McKee, failed to account, the surety also contends that two prior orders made herein by the Hon. A. F. MURPHY, circuit judge, were erroneous. Those orders denied motions made by the surety prior to trial to have William F. McKee interpleaded as a party defendant in his individual capacity. When the first of those orders was entered on August 27, 1932, the surety appealed to this court, but, on plaintiff's motion, that appeal was dismissed because the order was non-appealable. However, in that connection we said:

"If it be determined upon an appeal from the judgment that William F. McKee is a necessary party, the failure to bring him in will constitute reversible error." *Jones v. United States F. & G. Co.* 210 Wis. 6, 9, 245 N. W. 650.

Thereafter Judge VOIGT was called to preside at the trial. At the commencement and again at the close thereof, the surety renewed its motion to have William F. McKee interpleaded, and each of those motions was denied. All of those orders are now subject to review.

In support of those motions the following facts were established: On January 12, 1929, Samuel McKee died, intestate, leaving as his sole surviving heirs his brothers, William F. McKee and Elmer McKee, who petitioned to have A. H. Mehlberg appointed as administrator of Samuel McKee's estate. Mehlberg was duly appointed, and as administrator he filed the bond in suit, an inventory, and ultimately, in June, 1929, a final account. Upon a hearing pursuant to notice of final settlement and for determination of the inheritance tax, the county court determined, upon the facts then submitted, that the net estate amounted to

$3,996.59; that William F. McKee and Elmer McKee had received $1,998.28 and $1,998.29, respectively, and that each had paid an inheritance tax thereon. On July 17, 1929, William F. McKee signed the following receipt:

"This is to certify that I, the undersigned, have this day received of A. H. Mehlberg, administrator of said estate, the sum of $1,913.36 in full satisfaction of and for share of personal estate assigned to me by the judgment of said county court and in full discharge of said administrator from any and all liability to me;"

and on August 9, 1929, final judgment allowing Mehlberg's final account was entered. However, it was disclosed in this action that when Samuel McKee died, and also when Mehlberg was appointed administrator of his estate, Mehlberg was indebted to him and his estate for $5,000, upon which he had been paying interest at five per cent. per annum; that after Mehlberg's appointment as administrator, he informed William F. McKee that he owed the $5,000, and it was agreed between them secretly, and without the knowledge of Elmer McKee, that Mehlberg would not disclose in the inventory of the estate that he owed the $5,000, but that he would pay the interest thereon, and eventually the principal, directly to William F. McKee; that Mehlberg was then financially able to pay the $5,000 to the estate, and made payments to William F. McKee of $125 on July 1, 1929, before the estate was closed, and $125 each on January 1 and July 1, 1930, as interest on the $5,000; that William F. McKee deposited the amounts thus received in a bank in his own name, and for his own use, without informing Elmer thereof, and on payment of the additional sum of $1,913.36, executed the receipt for that amount in full satisfaction for his share of the estate, although he then well knew that Mehlberg's debt for $5,000 had been intentionally omitted from the inventory, final accounts, and settle-

ment, and without disclosing that he had also received the interest payment; and that it was not until after Mehlberg, in 1930, had lost all he had invested, and therefore defaulted in paying interest in 1931, that William F. McKee complained about Mehlberg's failure to inventory and account for the $5,000 which he owed. Thereafter William F. McKee had himself appointed administrator *de bonis non* of the estate. As such administrator he accounted for the interest payments, which he had received, and was authorized by the county court to institute this action.

The surety in its verified answer, upon which its motions to have William F. McKee interpleaded were based, in part, also alleged that if Mehlberg, as administrator, did fail to account for assets, or if he converted or fraudulently concealed any of the assets of the estate, he did so by virtue of a conspiracy between himself and William F. McKee; that if Mehlberg withheld funds rightfully belonging to the estate, William F. McKee, through his conspiracy with Mehlberg, had converted them to his own use and actually received the benefit thereof, and that he is liable therefor to the surety, if the court should find that Mehlberg, as administrator, failed to properly administer the estate, and that by reason thereof the surety was liable on its bond. The following statements, which were made by Judge VOIGT, in respect to the substance of those allegations, when he again denied a motion to have William F. McKee interpleaded toward the close of the trial, are significant:

"It is just as plain as day here that Mr. McKee and Mr. Mehlberg put up a fraud; you can't make him out so ignorant that he does not know right from wrong. If this man McKee can get away with this suit—I don't know just now whether he can or not—he will recover $2,500 as the result of his own fraud. That is what will happen here if the plaintiff here, in his official capacity as administrator, is entitled to recover this $5,000, he will get $2,500 as the result

of his own fraud. Now, whether the court can prevent it or not I don't know at this time, but it seems to me there ought to be power in a court, either in this action or some other action, to prevent this fraud. . . .

"The court said a while ago that in his opinion there is no doubt whatever that the defendant Mehlberg and the plaintiff William F. McKee conspired to commit a gross fraud on the brother of William F. McKee, named Elmer McKee, in an endeavor to cheat Elmer out of the $5,000 which Mr. Mehlberg failed to inventory as administrator of the estate of Samuel McKee, and failed to account for in any manner. I take no stock in William F. McKee's claim that he is so ignorant as not to know what was done with that $5,000. To me it is just a plain case of fraud."

Although, in that connection, Judge Voigt also said that if the court could use its discretion it should make an order interpleading William F. McKee, so that the surety might file a cross-complaint against him, he concluded that, under the decision in *State v. United States F. & G. Co.* 210 Wis. 178, 246 N. W. 434, and the statute in relation to filing cross-complaints, the court was without power to order such an interpleader.

Obviously, if William F. McKee, as administrator *de bonis non,* is permitted to recover in this action the full amount of $5,000, and interest, from the surety, he would, in his individual capacity as one of the two surviving heirs, and notwithstanding his intentional participation in the fraud and conspiracy, ultimately receive, as a result of such recovery, one-half of the net amount thereof, subject only to deductions for inheritance taxes, and the expenses of administration. If Mehlberg had actually paid all or even half of his debt directly to William F. McKee in payment of his half interest, as an heir, in Mehlberg's indebtedness to the estate of Samuel McKee, and Mehlberg, or the surety on his bond as administrator, had been sued by an administrator *de bonis non* of the estate to recover on that debt for the

benefit of the heirs of the estate, that payment to William F. McKee, to the extent of his beneficial interest therein, would certainly have constituted a valid, equitable defense to the recovery again of that amount for his indirect benefit. The decision in *McKeigue v. Chicago & N. W. R. Co.* 130 Wis. 543, 110 N. W. 384, is in point by analogy. In that case the only heir of a deceased brother settled with the railway company for the damages which she sustained by reason of his death as a result of the railway company's negligence. Subsequently, upon the appointment of an administrator for the brother's estate, he sued the railway company to recover the damages for the brother's death. In defense the railway company pleaded that payment had been made to the only heir in accordance with the settlement, and that, as she was the only heir and the property of the estate was far in excess of the claims allowed, she would be the only beneficiary of any further recovery. This court held that, in so far as the heir was concerned, there could be no further recovery, and that therefore the facts alleged set up an equitable defense to that extent. The court said:

"If, therefore, the administrator be allowed to prosecute his claim to judgment he will do so (under the allegations of the answer) solely in order that he may pay the net proceeds to the sole beneficiary who made a settlement of the claim with the defendant before the appointment of the administrator. If this settlement was freely and fairly made, must a court allow the claim to be prosecuted again for the sole benefit of the person who made it and who received and retains the full amount paid in settlement? The statement of the proposition seems its best answer. Such a rule would shock every natural sense of justice. Courts exist to redress or prevent wrongs, not to perpetrate them. Doubtless injustice is often inflicted by the decisions of courts, but this results from defects in legal machinery, the inability of mere human lawmakers to grasp and comprehend the effect of legislation, or from the necessary imperfection of finite judgment and reasoning, rather than from any conscious or intentional departure from the dictates of justice and right.

Happily, there are no arbitrary legal rules which prevent the court from administering justice in a case such as is claimed· by the answer to exist. . . . If she could make a valid settlement, then of course such settlement, at least in equity, becomes a bar to the prosecution of any action for her benefit by the personal representative."

So, in the case at bar, it would indeed shock every natural sense of justice to permit William F. McKee, after he voluntarily entered into that fraudulent conspiracy with Mehlberg, and, in furtherance thereof, acquiesced in Mehlberg's false inventory and final account, and executed an intentionally deceptive receipt as to the extent to which he shared in the estate, to profit, now that Mehlberg has become unable to pay because of insolvency, at the expense of the innocent surety, or his co-heir. If, by reason of a payment made on account of his indebtedness by Mehlberg directly to William F. McKee, the latter's right to again receive payment as an heir of the estate of Samuel McKee should, in equity, be deemed satisfied to that extent, so that an administrator could not require Mehlberg to pay again the portion of the debt which on collection would be distributable to William F. McKee, then, likewise, conduct on his part which, in law, would constitute a waiver or an estoppel to assert the right to receive for himself anything more from the estate on account of that indebtedness, should be held to defeat recovery from an innocent surety, in so far as that heir's share of the estate is concerned. Certainly, if, while Mehlberg was solvent and able to pay, William F. McKee voluntarily accepted Mehlberg as his debtor, in lieu of waiting to receive his half of the $5,000 indebtedness in the due course of the administration of the estate, he should not now, in so far as any innocent party, such as either the other heir or the innocent surety, is concerned, be permitted to participate in or be benefited by a recovery from the surety. In other words, William F. McKee, having voluntarily consented to accept Mehlberg as his debtor, in lieu of waiting to receive, in the

due course of the administration of the estate, one-half of the $5,000 debt, which Mehlberg should and then could have paid to himself as administrator, cannot now—when, because of Mehlberg's insolvency, neither the estate nor his surety can collect from Mehlberg—benefit by requiring the surety to pay the full amount of the indebtedness of Mehlberg to the estate, or by sharing with his co-heir in the latter's half interest in the amount now recoverable, as to which there is no waiver or estoppel binding on that co-heir. However, unless William F. McKee is made a party to this action in his individual capacity, there cannot, as to those matters, be a complete determination herein which will be binding on him, so as to bar him from having any interest in such portion of the $5,000 as can be recovered from the surety by the administrator *de bonis non* of the estate for the benefit of Elmer McKee. Consequently, William F. McKee is a necessary party, and the surety's motion to have him interpleaded should have been granted under sec. 260.19, Stats. *Washburn v. Lee,* 128 Wis. 312, 319, 107 N. W. 649. The decision in *State v. United States F. & G. Co., supra,* is not in point because the parties whom the defendants therein sought to have interpleaded were not, as in the case at bar, the ultimate beneficiaries of the recovery sought in that action; and the recovery sought was not subject to diminution because of any amount chargeable to the proposed parties.

As the denial of a motion to have a necessary party interpleaded constitutes reversible error, the judgment herein, as well as the orders denying defendant's motions to have William F. McKee made a party defendant in his individual capacity, must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter an order interpleading William F. McKee as a party defendant, and granting a new trial.