MARTINEAU, County Judge, Plaintiff, vs. MEHLBERG, Defendant: UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant and Respondent: McKEE, Defendant and Appellant.

*April 1—April 28, 1936.*

348

For the appellant there was a brief by *A. A. Brazeau* of Oconto, attorney, and *M. G. Eberlein* of Shawano of counsel, and oral argument by *Mr. Eberlein*.

*Allan V. Classon* of Oconto, for the respondent.

FRITZ, J.   The principal facts upon which the plaintiff seeks to recover herein from the defendant Mehlberg and the Guaranty Company, as surety on his bond as administrator of Samuel McKee's estate, for Mehlberg's failure to account for $5,000 of the assets of that estate, were stated in the opinion filed herein on a former appeal, and reported in *Jones v. United States F. & G. Co.* 214 Wis. 629, 254 N. W. 95.   Substantially the same facts were established on the trial which resulted in the judgment now under consideration. That judgment was ordered by the court after a trial upon which it was established conclusively that Mehlberg, as administrator of Samuel McKee's estate, had failed to inventory and account for $5,000, either invested in bonds or owing by Mehlberg to Samuel McKee, and constituting part of the latter's estate to be accounted for by Mehlberg as administrator. Upon the trial, the court submitted two questions to the jury for a special verdict, and answers were returned by the jury in accord with contentions of the appellant.   As the jury's first finding is immaterial in this action, it is only necessary to consider the second answer, by which the jury found that Mehlberg's failure to include those $5,000 in the assets of the estate was not a result of an agreement or conspiracy between him and the appellant.

Upon motions after verdict, the court changed that negative finding by substituting therefor its affirmative finding that Mehlberg's failure was the result of such an agreement or conspiracy between him and the appellant; and the court then ordered the judgment under review, holding the appel-

lant as well as Mehlberg, and the Guaranty Company as the latter's surety, liable to the estate of Samuel McKee for the loss of the $5,000, and also holding the appellant and Mehlberg liable over to the Guaranty Company, upon the payment by the latter of that loss with interest thereon and costs for the benefit of that estate.

On this appeal, the appellant contends that the jury's finding that Mehlberg's failure to inventory and account for the $5,000 was not a result of such an agreement or conspiracy between him and Mehlberg, was sustained by credible evidence; that the court erred in holding that the appellant's testimony was not credible, and that there was no credible evidence to sustain that finding; that the burden of proof was upon the surety to establish the existence of such an agreement or conspiracy by clear and convincing evidence to a reasonable certainty and it failed to discharge that burden; and that, in any event, there was under the evidence at least an issue of fact for the jury in that respect, and the court erred in substituting for the jury's answer, its finding that Mehlberg's failure to account for that $5,000 was the result of such an agreement or conspiracy between him and the appellant. Those contentions (excepting in so far as the proposition as to the burden of proof is concerned) cannot be sustained. A review of the evidence discloses that the court was fully warranted in substituting its affirmative finding for the jury's negative answer because the existence of such an agreement or conspiracy between the appellant and Mehlberg, and the latter's failure as a result thereof to inventory and account for $5,000 of the estate's assets were established beyond room for dispute by admissions in appellant's testimony and other undisputed proof on the trial to the following effect: That Mehlberg suggested to appellant before he joined in petitioning for Mehlberg's appointment as administrator the withholding of the $5,000 from the inventory. That although appellant knew of Mehlberg's concealment of

that $5,000, as thus suggested to him, at all times while the estate was being probated, and until it was finally closed in August, 1929, he never informed his brother and coheir, Elmer McKee, or County Judge JONES of that fraud, but, on the contrary, signed a deceptive receipt for his balance of the estate (without including the $5,000) which read: "This is to certify that I, the undersigned, have this date received of A. H. Mehlberg, administrator of said estate, the sum of $1,913.36, in full satisfaction of and for share of personal estate assigned to me by the judgment of said county court, and in full discharge of said administrator from any and all liability to me." That appellant offered no excuse for his failure to disclose that concealment, excepting that it was Mehlberg's way of doing it and the latter wanted it done that way. That appellant received three payments of $125 each directly from Mehlberg in July, 1929, January, 1930, and July, 1930, respectively, as interest on bonds for $5,000 which had belonged to his brother, Samuel, and were part of the latter's estate upon his death, and that, without informing his brother, Elmer, or otherwise disclosing his receipt of those payments, he had deposited and kept those moneys in his bank account for his own benefit. And that he also had included that $5,000 belonging to Samuel McKee's estate in a written demand which he made on April 25, 1931, upon the Oconto National Bank for the delivery to him of bonds aggregating $20,000 as property belonging to him. The appellant's admitted acts and conduct in those respects conclusively established that he had not only failed to disclose to the probate court and to his coheir that Mehlberg had suggested to him, and pursuant thereto had wilfully withheld $5,000 of the assets of the estate from his inventory accounts and final distribution therein, but also that the appellant had at all times acquiesced in that fraud and finally furthered its commission by his deceptive receipt purporting to accept $1,913.36 in full satisfaction for his share of the estate, and

in full discharge of the administrator's liability to him, and that, pursuant to that fraud, and as a result thereof, the appellant with full knowledge thereof, succeeded in profiting thereby to the extent of the three interest payments of $125 which he had received from Mehlberg, and attempted to profit further on his demand upon the Oconto National Bank for the delivery of that $5,000 to him as his own property. As it is obvious, in view of those established facts and circumstances, that the appellant was fully in accord with Mehlberg's proposed omission to include that $5,000 in the assets of the estate, and personally profited thereby, the court was certainly warranted in finding that Mehlberg's failure to include that $5,000 in the assets of the estate was a result of an agreement or conspiracy between him and the appellant.

Appellant further contends that even if Mehlberg's failure to include $5,000 in the assets of the estate was the result of an agreement or conspiracy between them, then the only affirmative relief which can be granted in this action against the appellant is to bar him from participating in the proceeds of the judgment rendered in favor of the plaintiff for the benefit of the estate, and that after the payment of expenses of administration and inheritance tax, one half of the remaining proceeds so paid in by the Guaranty Company, which would otherwise go to the appellant, should be returned to that corporation; but that the appellant cannot be required to pay to the Guaranty Company any moneys which it is required to pay in this action to the estate for either the benefit of Elmer McKee or for use for inheritance tax purposes. In that connection, appellant claims that under the decision on the former appeal herein (see *Jones v. United States F. & G. Co., supra*), the interpleader of appellant was permitted not for the purpose of cross complaining against him because of a conspiracy, and awarding affirmative relief by way of penalty for moneys which Elmer McKee should receive, but

in order to preclude him from deriving any benefit from any recovery herein, if he had agreed to accept Mehlberg as his debtor for his share of the estate in that $5,000; and that the greatest relief that could be awarded to the Guaranty Company would be to order the return to the Guaranty Company of appellant's ultimate share of the net proceeds of any recovery herein from the surety.

It is true that in so far as the judgment now provides that the Guaranty Company is entitled to recover from appellant such amount as it pays to the estate on account of Mehlberg's default, that provision thereof goes beyond the relief which was discussed in the opinion filed on the former appeal, when we held that the surety was entitled to an order interpleading the appellant. In that opinion the allegations of the cross complaint which the Guaranty Company proposed to file against the appellant upon his being interpleaded were treated solely as matters of equitable defense to any recovery for his ultimate benefit. The sufficiency of those allegations as a basis for affirmative relief was not considered then, and nothing was said in the opinion in relation to such relief. Consequently, there was no adjudication at that time in that respect. However, in the cross complaint which the Guaranty Company served on the appellant, when he was interpleaded, that corporation also prayed for judgment providing that if it was required to pay any money by reason of Mehlberg's default as to that $5,000 of assets, that it then have judgment against him and the appellant for such amount as it was obliged to pay, together with all costs, etc. The Guaranty Company's right to seek such affirmative relief was not challenged by a demurrer or similar pleading. Instead, the appellant filed an answer on the merits.

In ultimately awarding affirmative relief to the Guaranty Company against the appellant and Mehlberg, the court evidently proceeded on the theory that they, as joint tort-feasors,

were liable to the estate for the loss incurred by it because of Mehlberg's failure, as administrator, to include the $5,000 in the assets of the estate as a result of the conspiracy between him and the appellant; and that, if the Guaranty Company, as surety for Mehlberg, as administrator, was obliged to pay the amount of that loss for the benefit of the estate, it thereby became entitled to subrogation to the right of the estate to recover the amount of loss from those joint tort-feasors.

The court did not err in either of those respects. Precedent for holding the appellant equally liable to the estate for the loss sustained by it as the result of his co-operation with Mehlberg in his breach of trust is afforded by the decision in *Bunting v. Ricks,* 22 N. C. (2 Dev. & B. Eq.) 130, 32 Am. Dec. 699. In that case it was held that co-operation of a stranger with a trustee in an act amounting to a breach of the trust was sufficient to render the stranger liable for the loss occasioned thereby, if he had such notice of the existence of the trust as was sufficient, ordinarily, to awaken distrust, or put him upon inquiry. The court said:

"But much less than actual or particular knowledge in detail is sufficient to convert a person into a trustee, who co-operates with a dishonest trustee in an act amounting to a breach of trust. Constructive notice, from the possession of the means of knowledge, will have that effect, although the party were actually ignorant, but ignorant merely because he would not investigate. It is well settled, that if anything appears to a party calculated to attract attention or stimulate inquiry, the person is affected with knowledge of all that the inquiry would have disclosed. This principle we deem decisive of the present case."

However, liability on the part of the appellant and Mehlberg as joint tort-feasors for the loss sustained by the estate because of Mehlberg's failure to include the $5,000 in the assets of the estate as the result of an agreement or conspiracy between him and appellant can also be predicated

upon appellant's acquiescence and participation in Mehlberg's wrongful acts. An express agreement between them to consummate the injury to the estate was not necessary. As this court said in *Patnode v. Westenhaver,* 114 Wis. 460, 474, 90 N. W. 467:

"A mere tacit understanding between conspirators to work to a common purpose is all that is essential to a guilty, actionable combination. . . . Mutuality in the undertaking may be secured without any express agreement and without a spoken or written word between the conspirators or a meeting of the members of the combine, or their, even, all knowing each other; or the precise thing to be accomplished or plans for its accomplishment, either in a general way or in detail, being distinctly stated by any member of the combine to any other member. If there is a meeting of minds, brought about in any way, to accomplish the common purpose, the essentials of a guilty combination are all satisfied." *Lange v. Heckel,* 171 Wis. 59, 175 N. W. 788; *Wachowski v. Lutz,* 184 Wis. 584, 593, 201 N. W. 234.

The right of a party defrauded as the result of a conspiracy between a third person and one acting in a fiduciary capacity for the defrauded party, to recover the loss from either of the conspirators, as joint tort-feasors, was recognized in *Columbia Bank of Lodi v. Markgraf,* 195 Wis. 472, 218 N. W. 712. In that case the plaintiff sought to recover from one of its depositors the amount of his overdrafts by checks which upon payment by the bank on presentation were not charged in the depositor's account as the result of a conspiracy between him and the bank's cashier. This court said:

"It also clearly appears there was a secret understanding or conspiracy between the cashier of the bank and the defendant to defraud the bank by this method. Such a conspiracy would render both parties liable, and the defendant cannot escape the consequences of his fraudulent, unlawful act by pleading that he entered into a conspiracy to perform such act with the cashier of the bank. Both would be equally liable to the bank for the sums so taken from its custody,

and it conclusively appears from the allegations of the complaint that the defendant profited by this unlawful act on the part of both."

That is in accord with the decisions in the following cases in which all of the parties to a conspiracy to commit an unlawful act were considered equally liable for all damages caused to those injured thereby: *McLennan v. Church,* 163 Wis. 411, 158 N. W. 73; *Martens v. Reilly,* 109 Wis. 464, 84 N. W. 840; *Patnode v. Westenhaver, supra; Wachowski v. Lutz, supra.*

On the other hand, the rule is well established that the surety of a fiduciary who has been compelled to respond for the fiduciary's breach of trust is entitled to be subrogated to all rights of action which the *cestui que trust* or creditor has against the fiduciary and all parties who participated in his wrongful acts which were the cause of the default.   Stearns, Suretyship (4th ed.), p. 435, § 248; *Bunting v. Ricks, supra; Rhame v. Lewis,* 13 Rich. Eq. (S. C.) 269, 330; *National Surety Co. v. State Savings Bank,* 156 Fed. 21, 84 C. C. A. 187, 14 L. R. A. (N. S.) 155; *Richfield National Bank v. American Surety Co.* (C. C. A.) 39 Fed. (2d) 387; *National Surety Co. v. Massachusetts Bonding & Ins. Co.* (C. C. A.) 19 Fed. (2d) 448; *Dantzler Lumber & Export Co. v. Columbia Casualty Co.* 115 Fla. 541, 156 So. 116, 95 A. L. R. 258, 264; *American Bonding Co. v. National Mechanics' Bank,* 97 Md. 598, 606, 55 Atl. 395, 397; *American National Bank v. Fidelity & Deposit Co.* 129 Ga. 126, 58 S. E. 867, 869; *Blake v. Traders' National Bank,* 145 Mass. 13, 12 N. E. 414; *Stokes v. Little,* 65 Ill. App. 255.

It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.